IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARRIE WIRICK                                                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:14CV370 CWR-LRA

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                               DEFENDANT

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Carrie Wirick appeals the final decision denying her application for Supplemental Security Income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

**Factual and Procedural Background**

On August 30, 2010, Wirick protectively filed an SSI application alleging she became disabled on January 1, 2010, due to scoliosis, attention deficit disorder, cluster anxiety disorder, depression, and a left leg injury. She later amended her onset date to August 30, 2010. She was 29 years old at the time of filing, with past work experience as a stock clerk and grocery checker. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. At steps two and three, the ALJ found that although Plaintiff's "status post left ankle open reduction internal fixation, depressive disorder, personality disorder, and anxiety " were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except she may:

> sit up to one hour and alternatively stand up to one hour so that she stands and walks up to four hours of an eight hour workday; must not stand or walk more than 30 to 45 minutes at a time; may only occasionally stoop, kneel, crouch, crawl or balance; must not climb ladders, ropes or scaffolds; must avoid moving machinery, dust, strong doors, and fumes; ***limited to routine repetitive tasks involving only limited interaction with coworkers, supervisors, and the public; and work tasks must involve working more with objects than people with no timed production***.

Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a dressing-room-attendant, house-sitter, and order-caller.[2]

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 9, pp. 16-24 (Emphasis added).

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to proffer all post-hearing evidence in compliance with HALLEX I-2-7-30, and failed to assign controlling weight to the findings of Consulting Psychologist, Dr. Joseph Dunn.

Section I–2–7–30 of the Hearings, Appeals and Litigation Law Manual ("HALLEX") provides that the ALJ must proffer all post-hearing evidence unless the evidence was submitted by the claimant or her representative, the claimant knowingly

3

Case 3:14-cv-00370-CWR-LRA   Document 15   Filed 07/28/15   Page 4 of 13

waived her right to examine the evidence, or the ALJ proposes to issue a fully favorable opinion. The rule further provides that the proffer letter must give the claimant time to object, refute, or comment on the additional evidence, or to request a supplemental hearing. HALLEX I-2-7-30 (S.S.A.), 1993 WL 643048.

In the present case, Plaintiff argues that she was prejudiced by the ALJ's failure to make a complete proffer, namely his failure to include the *Medical Assessment of Ability to do Work-Related Activities* form submitted by Consulting Psychologist Dr. Jan Boggs following the first administrative hearing. Plaintiff acknowledges that she received Dr. Boggs's narrative report, but states that she was unaware that Dr. Boggs assessed functional limitations until the ALJ referenced the form in his written decision. The error was prejudicial, Plaintiff argues, because counsel was deprived of the opportunity to develop testimony from the vocational expert concerning the impact of these limitations on her occupational base. She specifically points to Dr. Boggs's conclusion that she has a poor ability to deal with the public, use judgment, interact with supervisors and deal with work stress; and, a fair ability to follow work rules and relate to co-workers.

The Commissioner does not challenge Plaintiff's assignment of error, but argues that any error was harmless. In support, the Commissioner asserts that Dr. Boggs's narrative report states that Plaintiff "malingered during the psychological examination

and was less limited than she attempted to appear."[3] The Commissioner also asserts that Dr. Boggs's narrative report, which was included with the ALJ's proffer, is consistent with the totality of evidence.

The Fifth Circuit has long held that although HALLEX does not carry the authority of law, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). "If prejudice results from a violation, the result cannot stand." *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000) (citing *Id.*). Prejudice is established by showing that additional evidence could have been produced that "might have led to a different decision." *Id.* at 458 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). An error is harmless if there is no "realistic possibility that, absent the error" the result would have been different. *January v. Astrue*, 400 F. App'x 929, 932 (5th Cir. 2010).

The Court notes that Dr. Boggs did not necessarily conclude that Plaintiff malingered during his examination. He simply noted that malingering was identified as one of three possibilities for Plaintiff's poor performance during a comprehensive mental evaluation in April 2012. Even so, the Court finds that Plaintiff's argument, while compelling, fails to demonstrate that she was prejudiced by the ALJ's failure to proffer Dr. Boggs's functional assessment.

---

[3] ECF No. 13, p. 5.

5

The ALJ found that Plaintiff has the residual functional capacity to perform light work, provided that she is limited to routine, repetitive tasks; has limited interaction with others; and, works with objects more than people. These limitations were included in both the ALJ's hypothetical to the vocational expert and in his ultimate residual functional capacity determination. While Plaintiff has credibly demonstrated that the ALJ's error deprived her of an opportunity to develop vocational testimony, she does not set forth with sufficient specificity how she was prejudiced given the ALJ's residual functional capacity determination. She simply states that the evidence was "potentially very favorable to her case," and that she was "not given a fair opportunity to incorporate the more limiting aspects of [Dr. Boggs's] opinion into VE cross-examination." However, an ALJ's hypothetical need not use specific diagnostic or symptomatic terms when other descriptive terms can adequately define the claimant's impairments. Counsel also posed the following hypothetical to the vocational expert at the second administrative hearing:

> Q: . . . . [I]f you had fair to poor ability to deal with conflict with others, easily agitated in interacting with others, can't work at a public job where she would have to deal with the public, would have difficulty carrying out many work related activities on an ongoing basis, in other words could not stay on task and especially without treatment, poor prognosis without treatment, would there be any jobs that a hypothetical individual could do?
>
> A: No.[4]

---

[4] ECF No. 9, pp. 84-85.

Considering this hypothetical, Plaintiff fails to explain how additional cross-examination of the vocational expert could have led to a different result. The ALJ clearly considered and rejected the notion that the limitations posed in counsel's hypothetical would preclude her from performing light work. In addition, as further set forth herein, Dr. Boggs's narrative report is consistent with his assessment and the assessment of DDS psychologist, Dr. Amy Hudson, who opined that Plaintiff could understand and remember simple instructions; interact with supervisors and co-workers at a very basic level; and, compete a normal work week without excessive interruption from psychologically based symptoms.[5]

Accordingly, the Court finds that the ALJ's failure to proffer all post-hearing evidence in violation of HALLEX I-2-7-30 does not amount to reversible error.

Next, Plaintiff argues that the ALJ erred in failing to assign controlling weight to the opinion of Dr. Dunn in violation of 20 C.F.R. § 404.1527 (d), which requires ALJs to consider the length of a physician's treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the supportability of the physician's opinion in weighing medical source opinions. A treating source's opinion is entitled to great weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *Giles v. Astrue,* 433 F. App'x 241, 246 (5th Cir. 2011) (unpublished)

---

[5]ECF Nos. 11, p 20; 14, p. 4.

(quotation omitted).  The record in this case, however, indicates that Dr. Dunn was a consulting examiner, not a treating physician.  As such, his opinion is "not accorded the controlling weight given to treating physicians." *Hernandez v.Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008).

    An objective review of the evidence shows that Plaintiff did not have an "ongoing treatment relationship" with any physician, in fact.  Rather, she had one-time examinations with three different psychologists --  Dr. Dunn, Dr. Whitcomb, and Dr. Boggs -- all of whom submitted narrative reports.  The ALJ considered each opinion and as noted *infra*, he assigned significant weight to the post-hearing report of Consultative Examiner, Dr. Jan Boggs.  As grounds, the ALJ stated that neither Dr. Dunn nor Dr. Whitcomb adequately considered Plaintiff's "possible malingering and lack of treatment." While the evidence does not clearly support this particular finding, substantial evidence supports the ALJ's ultimate conclusion that Plaintiff's mental impairments were not disabling.

    In a comprehensive mental examination conducted in January 2011, Dr. Dunn observed that Plaintiff was tearful, anxious, and easily distracted.  She had focus and concentration problems, but performed "fairly well."  He noted that she was last treated eight years ago with several pyschotropic medications, and was not currently receiving any treatment because she stated she could not afford it.  He also noted that she "appeared credible and appeared to be as self-disclosing as she could."  Plaintiff

primarily cited physical factors as interfering with her ability to function, but Dr. Dunn noted that her problems with "anger control probably interfered with her functioning in a public setting." He opined that she would have "difficulty carrying out many work-related activities on an ongoing basis, especially without treatment." He specifically noted that her prognosis was poor without treatment and "may be guarded with treatment." His impressions were that Plaintiff had features of Cluster B personality and borderline personality functioning, anxiety disorder, and attention-deficit/ hyperactivity disorder ("ADHD").[6]

In a comprehensive mental evaluation conducted in April 2012, Dr. Jennifer Whitcomb concurred that Plaintiff's mental impairments may stem from a behavior/personality disorder. Like Dr. Dunn, she remarked on Plaintiff's lack of consistent treatment and recommended further evaluation to rule out bipolar disorder and medication. On examination, she noted that Plaintiff was agitated, hyperactive, cooperative and an "adequate self-reporter." But intelligence testing revealed "significant issues" including possible "psychosis, malingering, or a personality disorder." Plaintiff's test results were also of "questionable validity" and her profile was likely "invalid, distorted or exaggerated." According to Dr. Whitcomb, "[p]atients exhibiting this type of scale are likely either manifesting an acute psychotic reaction or an overly dramatic cry for help. . . . If non-psychotic, the diagnosis of Borderline Personality Disorder is

---

[6]ECF No. 9, pp. 253-257. (Emphasis added).

probable." Based on these observations, Dr. Whitcomb concluded that Plaintiff was "currently unable to maintain coping skills to manage home and work responsibilities."[7]

After reviewing the narrative reports of Drs. Dunn and Whitcomb, the ALJ ordered an updated mental evaluation to resolve conflicts between their clinical findings and Dr. Hudson's mental residual functional capacity assessment. A post-hearing examination was subsequently conducted by Dr. Boggs, who submitted a narrative report and a *Medical Assessment of Ability to do Work-Related Activities* form rating Plaintiff's ability to perform work activity.

On examination, Dr. Boggs observed that Plaintiff was mildly dysphoric and anxious. She was cooperative but not sufficiently invested on the "psychometrics for valid outcomes," because she missed transparently easy items on intelligence testing, which did not comport with his observations of her intelligence and literacy. He did not continue with testing because of this. Quoting liberally from the reports of both Drs. Whitcomb and Dunn, Dr. Boggs opined that Plaintiff's "mood and personality problems," and impulse control difficulties were related to ADHD. He recognized that Dr. Whitcomb identified psychosis, malingering, and personality disorders as possibilities for Plaintiff's questionable test results, and he opined that her low frustration tolerance had manifested in some of her jobs. Although Dr. Dunn did not feel she should manage funds, Dr. Boggs noted that she was fully literate. He also noted her lack of current

---

[7]*Id.* at 276-277.

mental health treatment and stated that he expected her adaption to remain unchanged in the coming year.  Based on these observations, Dr. Boggs rated Plaintiff's ability to deal with the public, use judgment, interact with supervisors, deal with work stresses, and follow complex job instructions as poor, and rated her ability to follow work rules, relate to co-workers, and relate predictably in social situations as fair.  Her ability to understand, remember, and carry out simple tasks was also rated as good.[8]

The ALJ assigned significant weight to Dr. Boggs's opinion because he found it to be consistent with his clinical findings and Dr. Hudson's opinion.  In doing so, he assigned less weight to the findings of Drs. Dunn and Whitcomb because he found they did not adequately consider Plaintiff's malingering and lack of treatment.  While their narrative reports indicate that these doctors did consider those factors to some extent,[9] it is not the role of this court to re-weigh the medical evidence, try this case *de novo,* or substitute its judgment for the ALJ.  An ALJ is free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  To the extent

---

[8]ECF No. 9, pp. 291-297.

[9]Dr. Dunn stated that Plaintiff appeared credible and noted that she had not received medical treatment in eight years because she said she could not afford it; he opined that her prognosis was guarded even with treatment.  Dr. Whitcomb also remarked on Plaintiff's lack of consistent treatment and opined that her poor performance was caused by either psychosis, malingering, or a personality disorder.

the psychological assessments in this case were in tension with the other, the ALJ was entitled to find as a factual matter that one opinion was more well-founded than the other.

Further, contrary to what Plaintiff argues, benefits were denied not because of her inability to afford the treatment, but rather because she failed to prove that her untreated impairments were so severe that they prevented her from performing a limited range of light work. *Peebles v. Chater*, 77 F.3d 477 (5th Cir. 1995). As noted by the ALJ:

> . . . .[T]he **only treating notes are from March 2013.** During those visits, therapists noted that she had **not sought treatments since 2004.** Although medication was working for her at that time, she stopped taking the medication and attending therapy. They measured her **global assessment of functioning at 54, indicating moderate symptoms or moderate difficulty in functioning, despite her non-compliance.**
>
> . . . .
>
> The clamant's treating records show that her conditions improved when she took medication. . . . The claimant testified that she could not afford treatment or medication, but there is no evidence that she sought counseling and/or medication from free or reduced clinics, pharmacy programs, or emergency rooms. Further, she testified that she sought employment as recently as October 2012, but could not find a job. Lastly, there is no documentation of the alleged side affects of her medication.[10]

Plaintiff has never explained her failure to seek free medical care. Absent evidence that she exhausted all options, her arguments are unavailing for the reasons stated by the ALJ. *See* SSR 82–59, 1982 WL 31384 (requiring claimants to explore all possible resources, and to document contacts with such resources and well as financial circumstances).

In sum, the ALJ applied the proper legal standards in evaluating the medical opinions. His finding that Plaintiff has the residual functional capacity to perform light

---

[10]ECF No. 9, pp. 23, 24 (Internal citations omitted) (Emphasis in original).

12

work so long as she is limited to routine repetitive tasks and has limited interactions with others is supported by substantial evidence, and should not be disturbed here.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636.

This the 28th day of July 2015.

                                                      /s/ Linda R. Anderson
                                     UNITED STATES MAGISTRATE JUDGE